**RECORD NO. 14-1644**

In The
# United States Court Of Appeals
### For The Fourth Circuit

## DAWN V. MARTIN; MIGUEL GALLARDO,

*Plaintiffs – Appellants,*

v.

## JOHANNES BRONDUM;
## LONG AND FOSTER REAL ESTATE, INC.;
## LONG AND FOSTER COMPANIES;
## LONG AND FOSTER REALTORS;
## PATRICIA KNIGHT, a/k/a Patricia Knight Lambert;
## SUSAN HAUGHTON,

*Defendants – Appellees.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### AT ALEXANDRIA

————————

### BRIEF OF APPELLEES

————————

**Susan F. Earman**
**FRIEDLANDER, FRIEDLANDER**
  **& EARMAN, PC**
**1364 Beverly Road**
**Suite 201**
**McLean, VA 22101**
**(703) 893-9600**

*Counsel for Appellee*
  *Bromdum*

**Mikhael D. Charnoff**
**PERRY CHARNOFF PLLC**
**2300 Wilson Boulevard**
**Suite 240**
**Arlington, VA 22201**
**(703) 291-6650**

*Counsel for Appellees*
  *Long and Foster Real Estate, et al.*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  14-1644      Caption:  Dawn Martin v. Johannes Brondum

Pursuant to FRAP 26.1 and Local Rule 26.1,

Long and Foster Companies
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Mikhael D. Charnoff _____        Date: ____July 12, 2014____

Counsel for: Long and Foster Companies _____

# CERTIFICATE OF SERVICE
***************************

I certify that on ____July 12, 2014____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Susan F. Earman, Esq.                    Dawn V. Martin, Esq. pro se
Friedlander, Friedlander & Earman, PC    Miguel A. Gallardo, pro se
1364 Beverly Road                        7861 Parthian Court
Suite 201                                Springfield, VA 22153
McLean, VA 22101

s/Mikhael D. Charnoff _____        ____July 12, 2014____
        (signature)                                  (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1644__    Caption: __Dawn Martin v. Johannes Brondum__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Long and Foster Real Estate, Inc.__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Long and Foster Companies

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Mikhael D. Charnoff                          Date:     July 12, 2014

Counsel for: Long and Foster Real Estate, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on ____July 12, 2014____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Susan F. Earman, Esq.                    Dawn V. Martin, Esq. pro se
Friedlander, Friedlander & Earman, PC    Miguel A. Gallardo, pro se
1364 Beverly Road                        7861 Parthian Court
Suite 201                                Springfield, VA 22153
McLean, VA 22101

s/Mikhael D. Charnoff                              July 12, 2014
    (signature)                                       (date)

- 2 -

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES .....................................................................1

SUPPLEMENTAL STATEMENT OF THE CASE ................................2

      Supplemental Statement Of Facts......................................................6

SUMMARY OF PRIOR APPEAL ........................................................16

SUMMARY OF ARGUMENT ..............................................................18

ARGUMENT ..........................................................................................19

    I.     Standard of Review ........................................................20

    II.    The Relief Sought under Rule 60 is Untimely and Without Merit ...............................................................................21

          A.    The Rule 60 Motion was Untimely...........................................21

          B.    The Rule 60 Motion was Without Merit...................................23

    III.   The Relief Sought Under Rule 54 was Untimely and Without Merit ...............................................................................28

          A.    The Rule 54 Motion was Untimely...........................................28

          B.    The Rule 54 Motion was Without Merit...................................29

    IV.   Manner in Which Pro Se Litigants File Color Exhibits is Immaterial ...............................................................................35

CONCLUSION .................................................................................................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

## CASES:

Adardour v. Am. Settlements Inc.,
   2009 U.S. Dist. LEXIS 64181 (E.D. Va. July 24, 2009)...............................23

Arthur v. Pet Dairy,
   2013 U.S. Dist. LEXIS 169768 (W.D. Va. Dec. 2, 2013) ...........................33

Baez v. United States Dep't of Justice,
   684 F.2d 999 (D.C. Cir. 1982)..................................................................30, 31

Bailey v. Mid Atl. Isotopes/Geodax,
   66 Fed. Appx. 485 (4th Cir. Md. 2003)........................................................28

Bestor v. FBI,
   539 F. Supp. 2d 324, 2008 U.S. Dist. LEXIS 23468 (D.D.C. 2008) ...........27

Brockenbrough v. Johnson,
   2012 U.S. Dist. LEXIS 159215 (E.D. Va. Nov. 5, 2012) ...........................22

Carr v. District of Columbia,
   543 F.2d 917, 177 U.S. App. D.C. 432 (D.C. Cir. 1976)..............................22

Cherry v. Champion Int'l Corp.,
   186 F.3d 442 (4th Cir. N.C. 1999)...........................................................20, 31

Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,
   434 U.S. 412 (U.S. 1978) ..............................................................................30

Clear Sky Car Wash, LLC v. City of Chesapeake, Va.,
   2013 U.S. Dist. LEXIS 53439 (E.D. Va. Apr. 11, 2013)..............................23

Cooper v. Eagle River Mem'l Hosp., Inc.,
   270 F.3d 456 (7th Cir. 2001) ........................................................................28

Cosgrove v. Sears, Roebuck, & Co.,
   191 F.3d 98 (2d Cir. 1999) ...........................................................................32

Crawford Fitting Co. v. J. T. Gibbons, Inc.,
    482 U.S. 437 (1987)...............................................................30

Crossroads Equity Partners, LLC v. Dogmatic Prods., Inc.,
    2014 U.S. Dist. LEXIS 21520 (W.D. Va. Feb. 19, 2014)............................26

Delta Air Lines, Inc. v. August,
    450 U.S. 346 (1981) .............................................................31

EEOC v. Great Steaks, Inc.,
    667 F.3d 510 (4th Cir. N.C. 2012).......................................25, 26, 29

Ellis v. Grant Thornton LLP,
    434 Fed. Appx. 232, 2011 U.S. App. LEXIS 12051
    (4th Cir. W. Va. 2011) .........................................................32

Fed. Land Bank v. Cupples Bros.,
    889 F.2d 764 (8th Cir. 1989) ..................................................22

Gary v. Spires,
    634 F.2d 772 (4th Cir. 1980) ..................................................28

Hendrickson v. Walker,
    2009 U.S. Dist. LEXIS 130001 (E.D. Va. June 10, 2009)............................26

Hummel v. Hall,
    868 F. Supp. 2d 543 (W.D. Va. 2012)............................................22

Hunter v. Roventini,
    617 Fed. Appx. 225, 2015 U.S. App. LEXIS 9229
    (4th Cir. N.C. 2015)...........................................................36

In re Burnley,
    988 F.2d 1 (4th Cir. 1993) ....................................................20

Keeshan v. Eau Claire Coop. Health Ctrs., Inc.,
    394 Fed. Appx. 987 (4th Cir. S.C. 2010) ......................................32

King v. First Am. Investigations, Inc.,
    287 F.3d 91 (2d Cir. 2002) ...................................................22

iv

Martin v. Brondum,
    535 Fed. Appx. 242, 2013 U.S. App. LEXIS 15014
    (4th Cir. Va. 2013) .......................................................................4, 25

McLawhorn v. John W. Daniel & Co.,
    924 F.2d 535 (4th Cir. Va. 1991) ............................................ 21-22

MLC Auto., LLC v. Town of S. Pines,
    532 F.3d 269, 2008 U.S. App. LEXIS 14189
    (4th Cir. N.C. 2008) ................................................................... 20

Moolenaar v. Virgin Islands,
    822 F.2d 1342 (3d Cir. 1987) ..................................................... 22

Nevitt v. United States,
    886 F.2d 1187 (9th Cir. 1989) .................................................... 22

Pacheco v. Mineta,
    448 F.3d 783 (5th Cir. 2006) ...................................................... 31

Reid v. Angelone,
    369 F.3d 363 (4th Cir. 2004) ...................................................... 26

Rinaldi v. CCX, Inc.,
    388 Fed. Appx. 290 (4th Cir. N.C. 2010) ................................... 35

Summit Tech., Inc. v. Nidek Co.,
    435 F.3d 1371 (Fed. Cir. 2006) .................................................. 31

SunTrust Mortg., Inc. v. Unlimited Fin. Servs., LLC,
    2012 U.S. Dist. LEXIS 57531 (E.D. Va. Apr. 24, 2012) ............ 14

Taylor v. Republic Servs.,
    2014 U.S. Dist. LEXIS 11086 (E.D. Va. Jan. 29, 2014) ............. 29

Transit Casualty Co. v. Sec. Trust Co.,
    441 F.2d 788 (5th Cir. 1971), cert. denied,
    404 U.S. 883, 92 S. Ct. 211, 30 L. Ed. 2d 164 (1971) ................. 22

United Mine Workers v. Gibbs,
    383 U.S. 715 (1966) ..................................................................... 1

v

United States v. Hedgepeth,
    418 F.3d 411, 2005 U.S. App. LEXIS 16911 (4th Cir. Va. 2005)...............20

Walker v. California,
    200 F.3d 624 (9th Cir. 1999) ........................................................................28

## **STATUTES:**

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1367 ...............................................................................................1

28 U.S.C. § 1924 ....................................................................................1, 18, 19

## **RULES:**

Fed. R. App. P. 4(a) ..........................................................................................1

Fed. R. Civ. P 12(b)(6).................................................................................2, 17

Fed. R. Civ. P 54 .......................................................................................passim

Fed. R. Civ. P 54(d) ..................................................................................passim

Fed. R. Civ. P 54(d)(1)..............................................................................passim

Fed. R. Civ. P 60 .......................................................................................passim

Fed. R. Civ. P 60(b) ..................................................................................passim

Fed. R. Civ. P 60(b)(1)..............................................................................23, 24

Fed. R. Civ. P 60(b)(6) .......................................................................23, 26, 27

Fed. R. Civ. P 60(c)..................................................................................18, 21

## JURISDICTIONAL STATEMENT

Appellees agree that this Court enjoys subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4(a). The underlying District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 where a claim expressly arose pursuant to a federal law. The District Court had supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367. See generally United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

## STATEMENT OF ISSUES

### I.      Ordinary Taxing of Costs

Did the District Court err in denying a grossly untimely and meritless motion by Appellants to relieve them of the award of ordinary, itemized, and verified costs to Appellees pursuant to 28 U.S.C. § 1924 and Fed. R. Civ. P 54(d)(1) which allow for verified costs to prevailing parties, and where costs were already raised in a Prior Appeal to the Fourth Circuit Court of Appeals?

### II.      Ability of Pro Se Litigants to File Color Exhibits Electronically

Did the District Court err in denying to the pro se Appellants the specific ability to electronically mail or file color versions of certain exhibits, as opposed to the Clerk of Court scanning and uploading those color exhibits, and if so what prejudice if any actually accrued to Appellants where these particular exhibits played little to no obvious role in the Court's determinations?

1

## <u>SUPPLEMENTAL STATEMENT OF THE CASE</u>

On Friday, January 6, 2012, the District Court correctly dismissed with prejudice five of six counts brought in the Amended Complaint against all Appellees except Johannes Brondum. The claims dismissed with prejudice that day were Violation of Virginia Landlord-Tenant Act, Breach of Contract, Fraud, Defamation of Character, and Intentional Infliction of Emotional Distress. The District Court also dismissed the remaining count titled "Discrimination on the Bases of Race and National Origin in Violation of The Fair Housing Act and the Virginia Human Rights Act", but with leave to file a second amended complaint within fourteen days of the Order.

The very next business day Appellants rushed to file the Second Amended Complaint and for unknown reasons reasserted all of the dismissed claims in addition to re-pleading the Fair Housing Act claim. At the February 10, 2012, hearing on the Motions to Dismiss filed by Appellees, the state law claims were all dismissed as to Brondum, the dismissal of the state law claims as to the rest of the Appellees was reaffirmed, but the District Court graciously allowed the single Fair Housing Act claim to survive 12(b)(6). However, the District Court put Appellant Dawn Martin on clear and express notice that the Court expected her to exercise independent judgment in reevaluating the case.

**THE COURT:**  Also, Ms. Martin, I do want to say while you're appearing here pro se, you are a lawyer.  And so you're going to be held to the same standards and obligations of any counsel. And while I know it's your personal claim, it is important I think that the Court would expect you to exercise your own independent judgment in an objective view of the facts and reevaluate this claim as the case proceeds and certainly make a judgment whether you think there continues to be a good faith basis for these claims as you progress.

**MS. MARTIN:**  Absolutely, Your Honor.

**THE COURT:**  Because the Court is going to hold you to that standard.

However, instead of dropping an obviously meritless and frivolous case, Appellants chose to press forward, engaged in extensive paper discovery, insisted on taking the maximum number of depositions, ran this case until the eve of jury trial, and, defying credulity, actually filed their own Motion for Summary Judgment.

On July 17, 2012, the District Court orally granted the Motions for Summary Judgment filed by all Appellees, and orally denied Appellants' Motion for Summary Judgment.  A lengthy and well-reasoned Memorandum Opinion followed on September 11, 2012.

All Appellees filed Bills of Costs.  Appellee Brondum filed a Motion for Attorney's Fees against both Appellants.  The other Appellees filed a Motion for Attorney's Fees against Appellant Dawn Martin only.  A hearing was held on October 12, 2012, and the motions were taken under advisement.  Costs were taxed against Appellants on December 6, 2012, with respect to Appellee Brondum, and costs were taxed against Appellants on January 7, 2013, with respect to the rest of

3

the Appellees. By Order dated February 1, 2013, the District Court deferred final decisions on the Motions for Attorney's Fees pending the outcome of the appeal to the Fourth Circuit in Prior Appeal, Case No. 12-2119.

The Fourth Circuit affirmed the District Court's decisions on July 24, 2013. See Martin v. Brondum, 535 Fed. Appx. 242, 243, 2013 U.S. App. LEXIS 15014 (4th Cir. Va. 2013). Of note, Appellants raised the issue of costs in the Prior Appeal, and the Fourth Circuit declined the opportunity to even mention them.

The Fourth Circuit then denied Appellants' Petition for Rehearing and Rehearing en Banc by Order dated September 10, 2013.

Plaintiffs then sought a writ of certiorari from the Supreme Court of the United States of America. That was denied on February 24, 2014.

Appellants then returned to the District Court and on April 21, 2014 filed "Plaintiff's Motion for Clarification of December 19, 2014 Order, or, in the Alternative, for Rule 60(b) Relief from Judgment and to Retax Costs, Pursuant to Rule 54" (Doc. No. 164). Appellees filed timely Oppositions. Appellants filed two Reply Briefs on May 9, 2014. Appellants also filed on May 1, 2014, "Pro Se Plaintiffs' Consent Motion to File Color Photographs as Exhibits, Via E-mail or Disk."

By Order dated May 29, 2014, the District Court granted the first motion in part and denied it in part. The District Court granted the first motion "to the extent

4

the Court clarifies that its December 19, 2013 Order had no effect on the Clerk's taxation of costs, and it is otherwise DENIED." In the same Order, the District Court granted in part and denied in part the Consent Motion to File Color Photographs. The color photographs previously submitted were made part of the record, but the District Court denied the request for an email address to send additional copies. Appellants filed this appeal based on the May 29, 2014 Order.

By Order dated September 16, 2014, the Fourth Circuit granted Appellants' "Consent Motion to Adopt Joint Appendix from Prior Appeal, Case No. 12-2119, and to Supplement it with Updated Order and Trial Court Filings."

Appellants filed their Opening Brief on October 16, 2014. However, Appellant Dawn Martin then filed for bankruptcy protection on October 22, 2014, less than one week after filing of the Opening Brief. She filed a Suggestion of Bankruptcy with the Fourth Circuit on November 2, 2014. A stay was entered on November 25, 2014.

This case was then stayed until finally lifted on May 6, 2016. By separate Order dated May 6, 2016, a new briefing schedule was established. Appellees now respond.

**Supplemental Statement of Facts**

The Statement of the Case and the Facts supplied by Appellants are once again a familiar series of mischaracterizations, unstated premises, and irrelevant recitations of credentials and details.  Appellees are not satisfied with the Statement of the Case nor with the Facts and, because Appellants functionally attempt to re-litigate the Prior Appeal, must offer supplemental facts as follows:

The Deed of Lease expressly states on the very first page that rent is "due on the first day of each calendar month thereafter without notice, demand or deduction." (JA 136)

The Deed of Lease does not identify Appellant Gallardo as a tenant or occupant on the first page, last page, or anywhere in between.  (JA 136 to 144)

Appellant Gallardo never completed an application to reside at the property at 5444 Chieftain Circle.  (SJA 30)

Appellant Gallardo never signed a lease to reside at the property at 5444 Chieftain Circle.  (SJA 30)

Appellant Gallardo resided with Appellant Martin at a residential property elsewhere in Alexandria, Virginia for three years immediately prior to September 2003.  (SJA 35 – 36, 41)

Appellant Gallardo resided with Appellant Martin at 5444 Chieftain Circle from the beginning of the September 2003 lease.  (SJA 29 – 30)

Appellant Martin was aware at all times that Appellant Gallardo resided at 5444 Chieftain Circle from the beginning of the September 2003 lease. (SJA 55, 57)

Appellee Knight did not know until February 25, 2011 that Appellant Gallardo was residing at the property at 5444 Chieftain Circle. (SJA 68 – 82)

Appellee Brondum did not know until February 25, 2011 that Appellant Gallardo was residing at 5444 Chieftain Circle. (SJA 16 – 18)

Appellant Gallardo was an unauthorized occupant of 5444 Chieftain Circle from September 2003 through March of 2011 by residing there without the permission of the owner or property management, and occupying the property for more than two weeks in any twelve-month period. (JA 136, Paragraph 4).

Appellant Martin was in violation of Paragraph 4 of the Deed of Lease beginning two weeks from the start of her lease period in September 2003. (JA 136, Paragraph 4).

Despite occasional discussions, Appellant Martin never executed another lease for the property at 5444 Chieftain Circle. (SJA 88, 60 – 62).

As of October 1, 2005, Appellant Martin was on a month to month tenancy pursuant to Paragraph 15 of the Deed of Lease. (JA 139, Paragraph 15).

Appellee Long and Foster marked Appellant Martin as late with rent or as failing to pay the full amount of rent several times up to and including 2011. (SJA 89 – 123)

Appellant Martin wrote long, argumentative, and exhibit-laden letters to Long and Foster over the years. (JA 146 – 153, 161 – 162, 167 – 169, 176 – 178)

Paragraph 3 of the Deed of Lease states in relevant part: "If any installment of rent is not received by Agent or Landlord within five (5) days from the due date, Tenant covenants and agrees to pay as additional rent the sum of $180.00." (JA 136)

Appellant Martin's unyielding interpretation of Paragraph 3 of the Deed of Lease is that one can pay rent on the 6th day of each month without incurring a late fee. (SJA 42 – 44)

Appellee Knight testified that the reference in the second notice to the owner placing the property on the market for sale was a simple error. (SJA 83, 85 – 86)

Appellant Martin failed to pay rent for February of 2011, and indeed withheld the rent for that month. (SJA 52)

Joseph Amatangelo, a Vice President with Long and Foster, sent an email to Appellant Martin on February 23, 2011 which confirmed that Brondum required that the lease terminate as noticed, but that "if you wish to make a formal contract offer to purchase the property it must be made through his designated listing agent. The

listing agents name is Susan Haughton. Susan.haughton@longandfoster.com." (JA 191)

An inspection of the subject property was made by Appellee Brondum and Appellee Knight on February 25, 2011. Appellant Martin was present. Appellant Gallardo was present. (SJA 31 – 34)

Appellee Brondum found that the property was filthy and in poor condition. (SJA 6 – 15, 19 – 20, 32, 63 – 67, 286 – 288); (JA 279)

Appellant Martin emailed Appellee Haughton on February 24, 2011 to ask about purchasing the subject property. (JA 201 – 202)

Appellee Haughton emailed Appellant Martin on February 25, 2011 advising that Brondum intended to move back into the subject property, but that if Brondum chose to sell it that he would engage Haughton to exclusively list the property for sale. (JA 200)

Appellee Haughton emailed Appellant Martin on February 28, 2011 advising that Appellee Brondum "is not interested in entertaining an offer for sale as he will be moving back into the property." (JA 199)

Appellant Martin failed to vacate the property at 5444 Chieftain Circle by February 28, 2011. (SJA 53)

Appellant Martin failed to vacate the property at 5444 Chieftain Circle by March 2 of 2011. (SJA 53)

Appellant Martin raised an allegation of racial discrimination for the first time in her email of March 1, 2011 to Jeff Detwiler of Long and Foster.  (JA 62) After alleging that Appellee Knight acted in a hateful, spiteful, and unprofessional manner towards her at the February 25, 2011 inspection, Appellant Martin concluded that Knight "must reserve this treatment for people of color.  As you may know, I am African-American and Miguel is a Black Hispanic."  (JA 62)

Appellant Martin failed to pay rent for March of 2011.  (SJA 54)

Paragraph 10 of the Deed of Lease states that "no part of any security deposit or any accrued interest as required by law shall be applied by Tenant as payment of any part of the rent or other obligations due, and Tenant shall pay rent required each month as though no security deposit were ever paid."  (JA 138)

Appellee Brondum filed an eviction action against Appellant Martin in Fairfax County General District Court on March 8, 2011.  (SJA 127)

Appellant Martin filed counterclaims in Fairfax County General District Court including claims of racial discrimination against Appellee Knight.  (SJA 140 – 145)

Fairfax County General District Court ultimately entered judgment against Appellant Martin and in favor of Appellee Brondum at trial on June 30, 2011, when Martin failed to appear.  Judgment was granted for possession, rent, damages beyond normal wear and tear, as well as attorney's fees and costs.  (SJA 47 – 50, 282 – 284)

10

Appellant Martin finally vacated the property at 5444 Chieftain Circle on March 31, 2011 or April 1, 2011.  (SJA 5)

Appellee Brondum inspected the property at 5444 Chieftain Circle on Tuesday, April 5, 2011, and determined that the property was in even worse condition than he previously thought: "…it is a TOTAL disaster…" "…it is really heartbreaking."  (JA 279); (SJA 289 – 342)

Appellee Brondum considered the misfortune brought to him and the subject property and how he would deal with it.  Appellee Brondum ultimately determined that he could not live at the property at 5444 Chieftain Circle in the condition it was left in by Appellants nor could he afford to rehabilitate the property for his own use.  (SJA 25 – 26, 173 – 175)

Appellee Brondum signed an exclusive listing agreement with Appellee Haughton of Appellee Long and Foster on April 21, 2011.  (SJA 147 – 155)

Appellee Haughton listed the property at 5444 Chieftain Circle for sale on April 27, 2011.  (SJA 158 – 159)

An offer to purchase the property at 5444 Chieftain Circle was made on April 29, 2011, and accepted by Appellee Brondum on April 30, 2011.  (SJA 199 – 200, 468)

11

Appellant Martin never submitted a written offer of purchase for the property at 5444 Chieftain Circle after being provided with Appellee Haughton's name and email address on February 23, 2011.  (SJA 23, 57)

Appellant Martin never submitted a written offer of purchase for the property at 5444 Chieftain Circle after Appellee Haughton listed the property for sale on April 27, 2011.  (SJA 23, 57)

Appellant Martin never submitted a written offer of purchase for the property at 5444 Chieftain Circle at any time.  (SJA 23, 57)

Appellant Gallardo never submitted a written offer of purchase for the property at 5444 Chieftain Circle after being provided with Appellee Haughton's name and email address on February 23, 2011.  (SJA 23, 57)

Appellant Gallardo never submitted a written offer of purchase for the property at 5444 Chieftain Circle after Appellee Haughton listed the property for sale on April 27, 2011.  (SJA 23, 57)

Appellant Gallardo never submitted a written offer of purchase for the property at 5444 Chieftain Circle at any time.  (SJA 23, 57)

Appellee Brondum never gave Appellee Knight any direction that the subject property was not to be sold to anyone of any particular national origin.  (SJA 21 – 22, 84)

Appellee Brondum never gave Appellee Knight any direction that the subject property was not to be sold to anyone of any particular race or ethnicity. (SJA 21, 84 – 85)

Appellee Knight had no role in selling properties at all through Appellee Long and Foster, and instead only handled property management. (SJA 85)

Appellee Haughton did not receive any instructions from Appellee Brondum, with respect to any classes of people he would prefer not to sell the property to. (SJA 22, 160 – 161)

Appellee Haughton never met Appellant Martin or Appellant Gallardo until Haughton's deposition in May of 2012, more than a year after she listed the subject property for sale. (SJA 161)

Appellee Haughton was not aware of how Appellant Martin or Appellant Gallardo self-identified ethnically or racially until served with the instant lawsuit. (SJA 161 – 162)

The lawsuit was not filed until October 14, 2011, which was several months after the listing and sale of the subject property. (JA 3)

Appellee Brondum was never aware of the race, ethnicity, or national origin of any of the individuals who did make written offers for the subject property. (SJA 22)

On April 27, 2011 Appellee Brondum was sensitive to Appellee Knight's inquiry about the Long and Foster sign at the subject property solely due to the fact that Brondum was already involved in ongoing litigation with Appellant Martin in Fairfax County General District Court. (SJA 23 – 24)

Appellee Brondum earned and holds a Master's Degree in Africana Studies. (SJA 163)

Appellant Martin failed to timely respond to Long and Foster Real Estate, Inc.'s Requests for Admissions. (SJA 164 – 172) Martin never sought leave of Court to respond out of time, such that each and every request was deemed admitted by operation of law as to Long and Foster Real Estate, Inc. See e.g. SunTrust Mortg., Inc. v. Unlimited Fin. Servs., LLC, 2012 U.S. Dist. LEXIS 57531 (E.D. Va. Apr. 24, 2012). Especially pertinent admissions include:

**RFA No. 3: No agent of Appellee Long and Foster Real Estate, Inc. ever knew the race or national origin of the ultimate buyers of the property at 5444 Chieftain Circle, Alexandria, Virginia prior to closing.**

**RFA No. 7: At all times in 2011 Appellee Patricia Knight would never have had any role whatsoever in the sale of the property at 5444 Chieftain Circle, Alexandria, Virginia because she did not work with the sales department of Long & Foster Real Estate, Inc.**

**RFA No. 11:    Appellant Dawn Martin filed a claim of racial housing discrimination with the Fairfax County Human Rights Division which was rejected as reflected in the Determination dated December 14, 2011.**

**RFA No. 14:    There is not a single document that supports the specific notion that any agent of Appellee Long and Foster Real Estate, Inc. harbored any racial animus with respect to Appellant Dawn Martin at any time.**

14

**RFA No. 17:      There is not a single document that supports the specific notion that any agent of Appellee Long and Foster Real Estate, Inc. harbored any animus with respect to national origin at any time.**

**RFA No. 18:      There is not a single document that supports the specific notion that any agent of Appellee Long and Foster Real Estate, Inc. has ever used racially disparaging language with Appellant Dawn Martin.**

**RFA No. 21:      There is not a single witness who could testify that any agent of Appellee Long and Foster Real Estate, Inc. harbored any racial animus with respect to Appellant Dawn Martin.**

**RFA No. 30:      Appellant Dawn Martin brought counterclaims in Fairfax General District Court case number GV11006176-00 which pertained to the property at 5444 Chieftain Circle, Alexandria, Virginia and alleged racial discrimination.**

Appellants Martin and Gallardo both failed to timely respond to Brondum's

Requests for Admissions.  (SJA 474 – 487)  Nor did either Appellant ever seek leave

from the District Court to respond out of time, such that each and every request was

deemed admitted by operation of law.  Especially pertinent admissions include:

**RFA No. 1:  Defendant Brondum never met or saw the ultimate buyers the property at 5444 Chieftain Circle, Alexandria, VA.**

**RFA No. 4:    There is not a single document that supports the specific notion that Defendant Johannes Brondum harbored any racial animus with respect to Dawn Martin at any time.**

**RFA No. 4:    There is not a single document that supports the specific notion that Defendant Johannes Brondum harbored any racial animus with respect to Miguel Gallardo at any time.**

As publicly revealed in the structured dismissal of her most recent bankruptcy,

Appellant Dawn Martin received a massive contingency fee award.

As publicly revealed in the structured dismissal of her most recent bankruptcy, Appellant Dawn Martin turned over $779,434.98 to the Trustee.

As publicly revealed in the structured dismissal of her most recent bankruptcy, creditor and Appellant Miguel Gallardo was to be paid $109,999.99.

As publicly revealed in the structured dismissal of her most recent bankruptcy, after paying all creditors the total of $707,200.95 Appellant Dawn Martin was to receive a refund.

The refund to Appellant Dawn Martin would be $72,334.03.

## SUMMARY OF PRIOR APPEAL

By way of background, the underlying baseless lawsuit arose from speculative assertions by the tenant of a townhouse in Alexandria, Virginia, that her landlord did not want to sell his house to her or to her fiancé because of their race or ethnicity, and that both the landlord's property manager and real estate listing agent were somehow complicit.  There was never a single document that demonstrated Appellants' claim.  There was not a single witness that could support Appellants' claim.  Appellants also made admissions that undermined their sole remaining claim under the Fair Housing Act.

As previously established, the District Court did not err in granting summary judgment to Appellees on the Fair Housing Act claim where there was neither any *prima facie* case of racial discrimination nor any ability by Appellants to show that

discrimination was the real reason for the Appellees actions.  Indeed, the Fair Housing Act claim could have been dismissed with prejudice on the Motion to Dismiss because the claim was always totally implausible.  The Fourth Circuit agreed in the Prior Appeal.

As previously established, the District Court did not err in dismissing fraud pursuant to Fed. R. Civ. P 12(b)(6) where Appellants' own pleadings repeatedly pled that Appellants could not and did not actually rely upon one of the two superficially inconsistent notices to vacate which allegedly was false, and where there was an absence of required pleading particularity, and where there was an absence of proximately caused damages.  The Fourth Circuit in the Prior Appeal affirmed "because the harm that Plaintiffs' alleged from Defendants' allegedly fraudulent statements was too speculative to support a plausible claim for relief."

As previously established, the Fourth Circuit in the Prior Appeal affirmed the dismissal of "defamation, breach of contract, and intentional infliction of emotional distress for the reasons stated by the district court."

All further entreaties to the Fourth Circuit and the Supreme Court of the United States were denied.  And yet Appellants return to this Court seeking to establish new law, and upon the foundation of their comprehensively failed claims.

17

## SUMMARY OF ARGUMENT

As to the instant appeal, the District Court did not err in awarding ordinary, itemized, and verified costs to Appellees pursuant to 28 U.S.C. § 1924 and Fed. R. Civ. P 54(d)(1) which allow for verified costs to prevailing parties.

Procedurally, pursuant to Fed. R. Civ. P 60(c) a motion for relief from a judgment or order must be made "within a reasonable time," and no more than one year after entry of the order if relief is sought under one of the first three of six enumerated grounds. Appellants waited 15 and 16 months. Substantively, allegations of "mistake" by the Court designed to convince it to change its ruling are not cognizable under Rule 60(b).

Similarly, the Rule 54 argument fails procedurally. Pursuant to Fed. R. Civ. P 54(d)(1) "The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action." Here, Appellants failed to serve a motion within 7 days of January 7, 2013. Nor did Appellants serve such a motion within one month, or three months, or six months. Indeed Appellants never sought relief under Rule 54 until 15 and 16 months had passed.

Substantively, the Rule 54 argument fails as well. First, the Fourth Circuit has held that Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs. Second, Appellants urge the Courts to exercise restraint in awarding costs against a non-prevailing party in alleged public law litigation, but the case law

does not support their position, and the underlying case was made up of 5/6 meritless state law claims and 1/6 a wholly fictional civil rights claim. Third, Appellants' arguments as to their alleged inability to pay and the comparative positions of the parties also were made far too late, are based upon inadmissible or never-admitted information, and are undermined by Appellant Dawn Martin's recent successful dismissal from a bankruptcy court.

Finally, Appellants claim that the District Court erred by denying them as pro se litigants the specific ability to electronically mail or file color versions of certain exhibits, as opposed to the Clerk of Court scanning and uploading those color exhibits. However, they do not explain how this obscure logistical issue could lead to an abuse of discretion, how this matter was actually prejudicial, nor do Appellants cite to any case law or other authority to support their position. Furthermore, there can be no abuse of discretion as to the admission of evidence because this not a question of admissibility at all. The manner in which pro se litigants place color exhibits into the record to argue summary judgment is a purely ministerial issue.

## **ARGUMENT**

The District Court did not err in awarding ordinary, itemized, and verified costs to Appellees pursuant to 28 U.S.C. § 1924 and Fed. R. Civ. P 54(d)(1) which allow for verified costs to prevailing parties.

19

## I.    <u>**Standard of Review**</u>

This Court reviews the denial of a Rule 60(b) motion based on whether the District Court committed an abuse of discretion.  However, "in so doing, we 'may not review the merits of the underlying order; [we] may only review the denial of the motion with respect to the grounds set forth in Rule 60(b),' <u>In re Burnley</u>, 988 F.2d 1, 3 (4th Cir. 1993) (per curiam)." <u>MLC Auto., LLC v. Town of S. Pines</u>, 532 F.3d 269, 277, 2008 U.S. App. LEXIS 14189, *15-16 (4th Cir. N.C. 2008).

This Court also reviews an award of Rule 54 costs based on whether the District Court committed an abuse of discretion.  "As with any exercise of discretion by the district court, when it is within the bounds of the discretion conferred, we may not question it.  But the definition of those bounds is a question of law, and when a court traverses them, it abuses its discretion." <u>Cherry v. Champion Int'l Corp.</u>, 186 F.3d 442, 446 (4th Cir. N.C. 1999).

Appellees agree that this Court would also review the admission of evidence under an abuse of discretion standard.  <u>See</u> <u>e.g.</u> <u>United States v. Hedgepeth</u>, 418 F.3d 411, 418-419, 2005 U.S. App. LEXIS 16911, *16 (4th Cir. Va. 2005) ("A trial court possesses broad discretion in ruling on the admissibility of [419] evidence, and we will not overturn an evidentiary ruling absent an abuse of discretion.")  However, the issue of the method by which pro se litigants submit color photographs to the

20

District Court is not an evidentiary issue, as there was no ruling to admit or not admit them. This was a purely ministerial matter.

## II.    **The Relief Sought under Rule 60 is Untimely and Without Merit**

The relief sought in Appellants' motion was grossly untimely, without merit, and unsupported under Rule 60 of the Federal Rules of Civil Procedure.

### A.    **The Rule 60 Motion was Untimely**

Costs in the amount of $8,385.21 were awarded to Appellee Brondum on December 6, 2012. Costs in the amount of $10,786.86 were awarded to the Long & Foster Appellees on January 7, 2013. Appellants waited until April 21, 2014 to file the motion at issue, more than 16 months and 15 months respectively after the award of costs.

Pursuant to Rule 60(c) a motion for relief from a judgment or order must be made "within a reasonable time," and no more than one year after entry of the order if relief is sought under one of the first three of six enumerated grounds. Here, well more than one year had passed since costs were awarded in favor of all Appellees. Furthermore, waiting 15 or 16 months was simply not reasonable.

The Fourth Circuit has "held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay." <u>McLawhorn v. John W. Daniel & Co.</u>,

924 F.2d 535, 538 (4th Cir. Va. 1991). Here the delay in filing is 15 and 16 months

respectively.

The only reason offered was that Appellants filed an appeal to the Fourth

Circuit, and after losing there they petitioned the Supreme Court of the United States

for a writ of certiorari. No other grounds for the delay were offered. Fortunately the

law in this jurisdiction is clear that appellate review:

> does not toll the time period for a Rule 60(b) motion. <u>King v. First Am.
> Investigations, Inc.</u>, 287 F.3d 91, 94 (2d Cir. 2002); <u>Fed. Land Bank v.
> Cupples Bros.</u>, 889 F.2d 764, 766-67 (8th Cir. 1989); <u>Nevitt v. United
> States</u>, 886 F.2d 1187, 1188 (9th Cir. 1989); <u>Moolenaar v. Virgin
> Islands</u>, 822 F.2d 1342, 1346 n.5 (3d Cir. 1987); <u>Carr v. District of
> Columbia</u>, 543 F.2d 917, 925-26, 177 U.S. App. D.C. 432 & n. 67 (D.C.
> Cir. 1976); <u>Transit Casualty Co. v. Sec. Trust Co.</u>, 441 F.2d 788, 791
> (5th Cir. 1971), cert. denied, 404 U.S. 883, 92 S. Ct. 211, 30 L. Ed. 2d
> 164 (1971). Any motion for reconsideration could have been made
> during the pendency of Petitioner's appeals.

<u>Brockenbrough v. Johnson</u>, 2012 U.S. Dist. LEXIS 159215 (E.D. Va. Nov. 5, 2012).

By contrast, a Rule 60 motion filed within a few weeks of the order in question

would have been reasonable. <u>See</u> <u>Hummel v. Hall</u>, 868 F. Supp. 2d 543, 560 (W.D.

Va. 2012) ("The fact that Defendant filed his motion within a few weeks of entry of

the default judgment indicates that he acted within such a reasonable time.") The

motion was properly by the District Court denied as untimely.

In their Opening Brief the Appellants now argue that the District Court should

have calculated timeliness based upon another date. Appellants claim that they had

filed an Opposition to Costs and Attorney's Fees on October 9 or 10, 2012. But

Appellants wholly fail to understand that Rule 60 is a mechanism to, as its title simply states, seek relief from a judgment or order. There was no judgment or order to seek relief from on October 9 or 10, 2012. The costs awarded and included in the judgment occurred later, in December 2012 and January 2013. Appellants' arguments can and must fail because of this fundamental point.

### B.    The Rule 60 Motion was Without Merit

There was nothing before the District Court that could support relief under any of the six enumerated grounds of Rule 60(b). See generally Adardour v. Am. Settlements Inc., 2009 U.S. Dist. LEXIS 64181 (E.D. Va. July 24, 2009). Here, Appellants sought relief under Rule 60(b)(1) and Rule 60(b)(6). Neither was applicable under the circumstances.

Rule 60(b)(1) allows relief for "mistake, inadvertence, surprise, or excusable neglect." Notably, "Allegations of mistakes by the Court designed to convince 'the district court [to] change its mind' are not cognizable under Rule 60(b)." Clear Sky Car Wash, LLC v. City of Chesapeake, Va., 2013 U.S. Dist. LEXIS 53439 (E.D. Va. Apr. 11, 2013). Any fair assessment of the motion at issue was that Appellants regurgitated all of the arguments, speculation, and wild presumptions that they previously advanced before the District Court throughout the case and summary judgment. In other words, Appellants wanted to convince the District Court yet

again that it had somehow made a "mistake" in finding against them. That is not permitted under Rule 60(b)(1).

Appellants argued that there had been some change in the law, and that this dictated that costs not be awarded. This was baseless both factually and legally. Factually, the law had not changed at all. The Fourth Circuit affirmed the trial court's decision as to the Fair Housing Act (and every other legal issue). Although the trial court's December 19, 2013 Order characterized the affirmance as being made on slightly different grounds, the supposed difference in reasoning is somewhat illusory:

> This Court and the Fourth Circuit both concluded that the plaintiffs failed to meet their burden in this case. This Court held that the plaintiffs failed to establish a prima facie case of discrimination, though under somewhat different criteria than those articulated by the Fourth Circuit, and that the plaintiffs failed to show that the defendants' legitimate, non-discriminatory reasons for not selling the house to the plaintiffs were pretextual. The Fourth Circuit assumed without deciding that the plaintiffs established a prima facie case of discrimination and concluded that the plaintiffs failed to refute the defendants' legitimate, non-discriminatory reasons for not selling to them.

Order dated December 19, 2013 [Doc. No. 163], page 5.

First, the Fourth Circuit did not rule that Appellants had established a prima facie case, but instead merely assumed that they did before concluding that Appellants "did not refute the Defendant's legitimate, non-discriminatory reasons for refusing to deal with them. Therefore, we hold that the district court did

24

not err when it granted summary judgment on the Plaintiffs' FHA claim." <u>Martin v. Brondum</u>, 535 Fed. Appx. 242, 245, 2013 U.S. App. LEXIS 15014, *6 (4th Cir. Va. 2013). There was no prima facie case.

Second, the District Court was not ruling that an offer must always be made to establish a Fair Housing Act claim. The District Court merely recognized the practical reality that, based upon the facts and circumstances in the record, that (1) the property was not available for sale, (2) that Appellants were the only people in the world who were invited to make an offer anyway even though the property was not available for sale, and (3) that the only possible way to establish a Fair Housing Act claim in that context was for Appellants to actually make an offer that was declined. There was no new law and there was no mistake.

Legally, regardless of how Appellants chose to characterize the rulings of the Fourth Circuit, it did not make any difference as to costs. Appellants raised costs in the Prior Appeal, and the Fourth Circuit declined the opportunity to even mention them. That alone ought to be dispositive, and undermines any suggestion of "mistake."

Appellants also argued that there was "new law" because the District Court denied Appellees' motions seeking attorney's fees. This is contrary to law. The District Court's reference to <u>EEOC v. Great Steaks, Inc.</u>, 667 F.3d 510, 512-513 (4th Cir. N.C. 2012), which was an appeal from an unsuccessful Title VII action alleging

sexual hostile work environment, was neither new law nor did it have any effect on costs. Great Steaks prevailed at trial and by motion sought attorney's fees and costs under three statutory provisions. Costs were awarded pursuant to FRCP 54(d) and not pursuant to any of the three statutes discussed in <u>Great Steaks</u>.

Rule 60(b)(6) is a last chance catchall of "any other reason that justified relief." Rule 60(b)(6) "has been interpreted narrowly, granting relief only under 'extraordinary circumstances.'" <u>Hendrickson v. Walker</u>, 2009 U.S. Dist. LEXIS 130001 (E.D. Va. June 10, 2009) (citing <u>Reid v. Angelone</u>, 369 F.3d 363, 370 (4th Cir. 2004)). <u>See</u> <u>also</u> <u>Crossroads Equity Partners, LLC v. Dogmatic Prods., Inc.</u>, 2014 U.S. Dist. LEXIS 21520, 11-12 (W.D. Va. Feb. 19, 2014) (movant failed to demonstrate extraordinary circumstances required for Rule 60(b)(6) relief). Appellants citations in the District Court to more favorable standards allegedly employed by other Circuits were meaningless because the Fourth Circuit uses the extraordinary circumstances standard.

Appellants also suggested that the District Court had somehow already ruled on the issue of costs in their favor. They did so by misconstruing the District Court's language as to the mootness of one of Appellants' many motions. To be clear, the costs in this case were never vacated, and such relief was never properly sought in this case, including through the motion at issue.

Although the Appellants sought relief under Rule 60(b)(6), they did not articulate any other grounds for such relief, and certainly not any extraordinary circumstances. Instead, Appellants made the same dubious suggestions of new law, inconsistencies, and some generalized unfairness. The relief was not available. The District Court did not err by not granting it.

Appellants now generically argue that Rule 60(b) is applied "in the Interests of Justice" and imply that equitable factors somehow favor Appellants. Ironically, like in Bestor v. FBI, 539 F. Supp. 2d 324, 327, 2008 U.S. Dist. LEXIS 23468, *3 (D.D.C. 2008) cited by Appellants, "the plaintiff is not entitled to relief under this rule because there has been no change in Circuit law." As explained herein, Appellants are simply wrong to even suggest that there has been any change in Fourth Circuit law created by the Prior Appeal which was a complete affirmance of the District Court and its multitude of rulings in favor of Appellees. Even if there had been some token relief granted in the Prior Appeal (and there was none), the unpublished opinion would not constitute a change in controlling law. No authority cited by Appellants dictates a different result.

Of note, the surprising denial of attorney's fees sought by Appellees never bore any relation to the taxing of costs. And yet appellants consistently attempt to conflate standards for awarding costs with those to award attorney's fees.

## III. The Relief Sought Under Rule 54 was Untimely and Without Merit

The relief sought in Appellants' motion was grossly untimely, without merit, and unsupported under Rule 54 of the Federal Rules of Civil Procedure.

### A. The Rule 54 Motion was Untimely

Costs in the amount of $8,385.21 were awarded to Appellee Brondum on December 6, 2012. Costs in the amount of $10,786.86 were awarded to the Long & Foster Appellees on January 7, 2013. Appellants waited until April 21, 2014 to file the motion at issue, more than 16 months and 15 months respectively after the award of costs. Pursuant to Rule 54(d)(1) "The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action."

Appellants failed to serve a motion within 7 days of January 7, 2013. Nor did Appellants serve such a motion within one month, or three months, or six months. Indeed Appellants never sought relief under Rule 54 until 15 and 16 months later. That came far too late and was properly denied as grossly untimely. In the Fourth Circuit, "failure to make a timely motion under the rule constitutes a waiver of the right to such review." Bailey v. Mid Atl. Isotopes/Geodax, 66 Fed. Appx. 485, 486 (4th Cir. Md. 2003) (citing Gary v. Spires, 634 F.2d 772, 773 (4th Cir. 1980); see also Cooper v. Eagle River Mem'l Hosp., Inc., 270 F.3d 456, 464 (7th Cir. 2001); Walker v. California, 200 F.3d 624, 626 (9th Cir. 1999)).

Remarkably, although Appellants spend long sections of the Opening Brief making pleas to the imagined equities in their favor, apparently no argument at all was devoted to rebutting the simple fact that the Rule 54 motion was more than a year late, and untimely as a matter of law.

### B.    The Rule 54 Motion was Without Merit

The District Court was well within its discretion to award costs to the prevailing parties under Rule 54.  Indeed, "the Fourth Circuit has held that Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs." Taylor v. Republic Servs., 2014 U.S. Dist. LEXIS 11086 (E.D. Va. Jan. 29, 2014) (citations omitted).  Appellants' arguments to the contrary were previously made to the Fourth Circuit and to the Supreme Court of the United States, without effect. Appellants are still wrong.

Appellants' reliance on EEOC v. Great Steaks, Inc., 667 F.3d 510, 512-513 (4th Cir. N.C. 2012), which was an appeal from an unsuccessful Title VII action alleging sexual hostile work environment, was misplaced.  Great Steaks prevailed at trial and by motion sought attorney's fees and costs under three statutory provisions. The district court denied the motion.  The case had no application here because costs were awarded pursuant to FRCP 54(d) and not pursuant to any of the three statutes discussed in Great Steaks.

The cited case of <u>Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n</u>, 434 U.S. 412, 421 (U.S. 1978) does not speak to the separate issue of "costs" which were assessed here. This case simply does not support Appellants' position, no matter how much they want to conflate attorney's fees and costs.

Appellants previously cited to <u>Crawford Fitting</u> for the notion that the District Court should exercise restraint in awarding costs against a non-prevailing party in "public law litigation." But this is a retaliatory suit, not "public law litigation," and the cited case does not stand for the proposition offered. Indeed, the very first sentence of the opinion clearly states exactly what is at issue: "In these two consolidated cases we address the power of federal courts to require a losing party to pay the compensation of the winner's expert witnesses." <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437, 438 (1987). There were no designated expert witnesses in the District Court, and the <u>Crawford</u> case offers nothing to the analysis here.

The previous citation to <u>Baez v. United States Dep't of Justice</u>, 684 F.2d 999 (D.C. Cir. 1982) only helps Appellees, where the Court observed that "taxation of costs merely represents the fair price of unsuccessful litigation." <u>Id.</u> at 1003. Indeed, the opinion is completely contrary to Appellants' position here:

> The presumption explicitly stated in Rule 54(d) – that the prevailing party is normally entitled to costs in the district court as a matter of

course – has proven very powerful indeed.  In <u>Delta Air Lines, Inc. v. August</u> the Supreme Court stated clearly that prevailing parties "presumptively will obtain costs under Rule 54(d)," and that "because costs are usually assessed against the losing party, liability for costs is a normal incident of defeat."  Every circuit court that has considered the question (ten out of twelve) has not only recognized the presumption, but has held that a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so. Accordingly, federal courts have placed on the unsuccessful parties some burden of showing circumstances sufficient to overcome the presumption favoring the prevailing party.

<u>Id</u>. at 1004.

Appellants' previous reference to <u>Summit Tech., Inc. v. Nidek Co.</u>, 435 F.3d 1371 (Fed. Cir. 2006) was not useful as it only dealt with the minutiae of what should and should not be taxable as costs, such as deposition transcripts, photocopy expenses, and computer animations as demonstrative exhibits.  Appellants made no such particular argument in the District Court, and any such argument would come far too late anyway.

Appellants carefully avoided Fourth Circuit authority on this point when briefing the District Court.  To be clear, the alleged good faith of Appellants is not a sufficient basis to refuse an assessment of costs:

Most circuits, including this one, have rejected the argument that an unsuccessful Title VII plaintiff's good faith in bringing the suit will likewise shield her from being taxed with her opponent's costs. "[G]ood faith, standing alone, is an insufficient basis for refusing to assess costs against [the losing] party." <u>Cherry</u>, 186 F.3d at 446; see also <u>Pacheco v. Mineta</u>, 448 F.3d 783, 794 (5th Cir. 2006) ("Every circuit to expressly address the question in a published opinion – the Fourth, Sixth, Seventh, Ninth and Tenth – has ruled that good faith, by itself,

cannot defeat the operation of Rule 54(d)(1).”); <u>Cosgrove v. Sears, Roebuck, & Co.</u>, 191 F.3d 98, 101 (2d Cir. 1999) (“We see no reason . . . to apply the same type of heightened [Christiansburg] standard to the assessment of costs.”).

<u>Keeshan v. Eau Claire Coop. Health Ctrs., Inc.</u>, 394 Fed. Appx. 987, 998 (4th Cir. S.C. 2010).  The Fourth Circuit clarified in <u>Keeshan</u> that “The same deterrent rationale does not necessarily hold true for costs, which are typically much less than attorneys’ fees.”  <u>Id</u>.  And yet the Opening Brief repeatedly relies on <u>Keeshan</u> as somehow favorable to Appellants.

Appellants’ reliance on <u>Ellis v. Grant Thornton LLP</u>, 434 Fed. Appx. 232, 235, 2011 U.S. App. LEXIS 12051, *7 (4th Cir. W. Va. 2011) is also quite misplaced: “With regard to the remaining $61,957.45 in costs, the district court correctly found that the issues in the case were close and difficult. The case was hotly contested at trial and in the previous appeal.”  By contrast, the instant case was 5/6 over from the beginning, and Appellants wholly failed to prevail on the sole remaining FHA claim.  Moreover, the total costs here are just over $19,000 while in <u>Ellis v. Grant Thornton LLP</u> the amount was almost $62,000.

Appellants’ arguments as to ability to pay and the comparative positions of the parties also came far too late.  More crucially, there was zero evidence in the record as to the assets of any party.  Even in 2014 Appellants failed to offer any actual evidence of ability to pay, instead just making self-serving, unverified, and dubious statements as to one of the two Appellants.  Appellant Dawn Martin, an

attorney with 30 years' experience who graduated from a top ten law school, claimed in a footnote that she grossed $800 in 2013. She claimed, again without submitting any financial statements under oath or documentation, that she had no assets at all. Appellants did not even make any specific claim as to Appellant Miguel Gallardo. The District Court need not have given this argument any weight. <u>See</u> <u>e.g.</u> <u>Arthur</u> <u>v. Pet Dairy</u>, 2013 U.S. Dist. LEXIS 169768 (W.D. Va. Dec. 2, 2013) "Plaintiff's assertions of inability to pay are too tenuous to justify the unusual step of denying Defendant's bill of costs."

Moreover, the bankruptcy court recently dismissed Appellant Dawn Martin, allowing the stay in this case to be lifted. Indeed, as publicly revealed in the structured dismissal of her most recent bankruptcy, Appellant Dawn Martin received a massive contingency fee award. She turned over $779,434.98 to the Trustee. Creditor and Appellant Miguel Gallardo was to be paid $109,999.99. After paying all creditors the total of $707,200.95 Appellant Dawn Martin was to receive a refund. The refund to Appellant Dawn Martin would be $72,334.03. Obviously, $109,999.99 and $72,334.03 are each more than adequate to pay the ordinary taxed costs of $8,385.21 and $10,786.86 respectively.

Appellants also cited a webpage (which is clearly written hearsay and objected to as such) as to the alleged assets of Long and Foster Companies, which is a parent company of Long and Foster Real Estate, Inc. and which has nothing to do with this

case. The reasoning appeared to be that it is okay to fabricate claims against a big corporation because they can better afford to waste over $100,000 in attorney's fees and costs defending Appellants perceived grievances dressed up as a Fair Housing Act claim. Appellants even argued that Long & Foster had benefitted from the litigation by exposing what terrible people they employ. Appellants repeat those risible notions in their current appeal.

Appellants briefly argue that the District Court erred independently by not holding an evidentiary hearing regarding the costs sought. However, Appellants briefed and argued all of these points in writing. Moreover, the District Court did hold an argument hearing, and Appellants cite no authority whatsoever in their Opening Brief as to why an evidentiary hearing was necessary or guaranteed.

Appellants spent much space in the Opening Brief on the various factors that they advocate the Fourth Circuit should compel the District Court to take into consideration. The most fundamental flaw of this approach is that this was never a civil rights case to begin with, where Appellants invoked the Fair Housing Act without grounds. This is also why the "chilling" argument does no work in this case. This case was far from a genuine civil rights case that just missed the mark.

There was no basis to not award costs. Furthermore, in the Fourth Circuit, "if a district court chooses to depart from the general rule favoring an award of costs to the prevailing party, the court must justify its decision by 'articulating some good

reason for doing so.'" <u>Rinaldi v. CCX, Inc.</u>, 388 Fed. Appx. 290, 298 (4th Cir. N.C. 2010) (citations omitted).  There were no good reasons to be articulated here.

## IV.    **Manner in Which Pro Se Litigants File Color Exhibits is Immaterial**

Appellants claim that the District Court erred by denying them as pro se litigants the specific ability to electronically mail or file color versions of certain exhibits, as opposed to the Clerk of Court scanning and uploading those color exhibits.  They do not explain how this obscure logistical issue could lead to an abuse of discretion.  Nor do Appellants persuasively explain how this minor matter could so prejudice what they otherwise believe to be a compelling case of extensive wrongdoing by a slew of bad actors.  Nor do Appellants cite to any case law or other authority to support their position.

These particular exhibits played little to no obvious role in the Court's determinations.  Appellees consented to the Appellants motion in the District Court as a matter of courtesy and basic fairness, but not because the issue had any conspicuous importance.  The photos of course speak for themselves, regardless of whether they are in color or black and white.

Tellingly, Appellants argue on page 53 of their Opening Brief that the full color photos would "demonstrate that the Defendants engaged in misconduct by misrepresenting the house as "trashed," with "grime" all through it, and for referring to Plaintiffs as "total animals" and other baseless, dehumanizing, unprofessional

terms." This is an unserious allegation because Appellees had no way of knowing that the full color photos were not already submitted to the District Court, such that they would not have known that they could freely "misrepresent" the condition of the rental property. Like much of this case, this argument is nothing more than rank speculation and grasping at straws.

Of key significance, there is no abuse of discretion as to the admission of evidence because this not a question of admissibility at all. Appellants wished to submit color photographs in support of their summary judgment pleadings, and they did. The clerk of court accepted the exhibits. In response to their motion, the District Court granted the relief in part by making the color version of the photographs part of the record. Obviously the presentation of the color versions of the photographs made no difference whatsoever to the District Court's rulings.

Interestingly, in a somewhat similar context where a pro se litigant sought to be permitted to use the electronic filing system, the Fourth Circuit noted that there was no indisputable right in that regard. See Hunter v. Roventini, 617 Fed. Appx. 225, 227, 2015 U.S. App. LEXIS 9229, *3 (4th Cir. N.C. 2015). In any event, no error nor any harm is apparent.

## **CONCLUSION**

This saga of a lawsuit first filed in 2011 has been a complete abuse and misuse of a statute enacted for noble and progressive purposes. There were no procedural

or substantive grounds for the District Court to award Appellants the relief they sought. Their untimely and baseless motion seeking relief under Rule 60 and Rule 54 was properly denied. And the manner in which color photos are filed with the District Court by pro se litigants is of no moment. This Court can safely affirm.

Respectfully submitted on this 27th day of May, 2016

/s/  Susan F. Earman
Susan F. Earman
FRIEDLANDER, FRIEDLANDER
  & EARMAN, PC
1364 Beverly Road
Suite 201
McLean, VA 22101
(703) 893-9600

*Counsel For Appellee*
  *Bromdum*

Mikhael D. Charnoff
PERRY CHARNOFF PLLC
2300 Wilson Boulevard
Suite 240
Arlington, VA  22201
(703) 291-6650

*Counsel for Appellees*
  *Long and Foster Real Estate, Inc., et al.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains <u>8,662</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated:  May 27, 2016                /s/  Susan F. Earman
                                    Susan F. Earman
                                    FRIEDLANDER, FRIEDLANDER
                                      & EARMAN, PC
                                    1364 Beverly Road
                                    Suite 201
                                    McLean, VA 22101
                                    (703) 893-9600

                                    *Counsel For Appellee*
                                      *Bromdum*

                                    Mikhael D. Charnoff
                                    PERRY CHARNOFF PLLC
                                    2300 Wilson Boulevard
                                    Suite 240
                                    Arlington, VA  22201
                                    (703) 291-6650

                                    *Counsel for Appellees*
                                      *Long and Foster Real Estate, Inc., et al.*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on May 27, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA 23218
(804) 249-7770